## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Maurice A. Jackson,

Plaintiff,

v.

Baldwin, *et al.*,

Defendants.

Case No. 18-cv-06457

Judge Mary M. Rowland

### MEMORANDUM OPINION AND ORDER

Plaintiff Maurice A. Jackson is a prisoner of the State of Illinois Department of Corrections. He brings a claim for monetary damages pursuant to 42 U.S.C. § 1983, alleging that several state employees failed to protect him from physical and psychological injuries while at Stateville Correctional Center ("Stateville") by denying his requests for protective custody ("P.C.") and emergency grievances. Defendants John Baldwin (Director, Illinois Department of Corrections ("IDOC")), Sherry Benton (Chairperson, Administrative Review Board ("ARB")), and officers Clemmens (Intelligence Unit Officer, IDOC), Moreno (Intelligence Unit Officer, IDOC), Nicholson (Warden of Stateville), and Williams (Assistant Warden of Stateville) move to dismiss the Complaint for failing to state a claim. (Dkt. 69). For reasons stated herein, the Motion [69] is granted as to Movants Baldwin, Clemmens, Moreno, Nicholson, and Williams, and denied as to Movant Benton.[1]

---

[1] In the caption of his Complaint, Jackson also names Stateville as a defendant. However, he fails to allege any claims against Stateville itself in the body of the Complaint. As a result, Stateville is also dismissed from this case. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

## I.    Background

The following factual allegations are taken from Jackson's Amended Complaint (Dkt. 56) and are accepted as true for the purposes of the Motion to Dismiss. See *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Jackson is a prisoner of the State of Illinois Department of Corrections, Dkt. 56, ¶ C, and suffers from psychiatric conditions, including schizophrenia, that make him vulnerable to abuse. *Id.* at ¶¶ H, 14.

When he transferred to Stateville from Pontiac, Jackson had been in litigation before Judge Myerscough of the Central District of Illinois. *Jackson v. Pontiac Correctional Center*, 17-CV-1362 (C.D. IL). In that case the court, on August 14, 2017, ordered IDOC to keep Jackson in P.C. while he was on suicide watch. The parties to that case reached an agreement to place Jackson in "unapproved P.C." to allow time to re-evaluate his placement in P.C. in light of threats and harassment concerns. On August 21, 2017 Jackson was transferred to Stateville, out of Judge Meyerscough's jurisdiction.

When he transferred to Stateville, Warden Nicholson, despite a court order, took Jackson off crisis watch and denied him prison-level P.C. *Id.* at ¶ 8.  On August 24, 2017, Judge Myerscough ordered that Jackson be placed on "unapproved P.C." and ordered Stateville to evaluate Jackson for P.C. within one week. *Id.* at ¶¶ 9-10. On August 30, 2017, Movants Clemmens, Nicholson, and Williams denied Jackson P.C.

2

Jackson asserts that they failed to properly consider his emotional and mental history. *Id.* at ¶ 11.

On September 20, 2017, defendant Bedwell, a Correctional Officer at Stateville, told Jackson that he "heard [Jackson] suck[s] dick for food," and that if Jackson "looked out" for him, he would give Jackson "something out of the officer's kitchen." *Id.* at ¶ 15. Over the following days, Bedwell continued to make sexually derogatory remarks and suggestions to Jackson. *Id.* at ¶ 16. Jackson filed an emergency grievance with Nicholson, but the request was denied. *Id.* at ¶ 17. Jackson then filed an imminent danger injunction with this Court, Dkt. 1, and reported Bedwell's conduct to defendants Perez and Vergara, officers with IDOC's internal affairs unit. Dkt. 56, ¶ 19. In retaliation for reporting Bedwell's behavior, Perez and Vergara threatened to have Jackson transferred, *Id.* at ¶ 20, and said that Jackson was "not safe at Gate 5" or Stateville. *Id.* at ¶ 21.

On October 2, 2017, defendant Rosa, another Correctional Officer at Stateville, woke Jackson and stated that he "should hook [Jackson's] P.C. ass up," which Jackson construed as a direct threat. *Id.* at ¶ 22. That same day, Bedwell called Jackson a "snitch ass bitch," and Jackson was placed in the general population bullpen instead of the P.C. bullpen. *Id.* at ¶ 23. Jackson filed an emergency grievance with Nicholson. Nicholson denied Jackson's grievance the next day, October 3, 2017. *Id.* at ¶ 17.

Due to mental health issues, Jackson was subsequently placed on crisis watch. *Id.* at ¶ 18. During this time, Rosa and defendant Mulvill, a correctional officer at Stateville, told Jackson to "stick [his] dick out of the 'chuck hole' and 'jag off' for them."

3

*Id.* Jackson refused, and Rosa and Mulvill continued taunting Jackson by asking him if he "wanted their spicy cucumber" and by telling him that that they wanted to "'finger fuck' him with 'finger food.'" *Id.*

On February 14, 2018, Jackson met with Benton to request that he be placed in P.C. due to the correctional officers' threats and harassment, and because he had been placed in the general population bullpen with members of a gang that had a "hit" out for him. *Id.* at ¶¶ 25-26. Benton failed to present Jackson's case to the ARB, and his request for P.C. was denied on February 15, 2018. *Id.* at ¶ 27. Jackson subsequently signed himself back into P.C. and filed a grievance against Benton, which was also denied. *Id.* at ¶ 28.

Jackson was denied prison-level P.C. on April 25, 2018. *Id.* Shortly thereafter, Jackson became aware of additional inmate threats against him, and was again denied P.C. on May 18, 2018. *Id.* at ¶ 29. During this time, "meetings were held" with Moreno regarding Jackson's grievances and appeals. *Id.* at ¶30. On June 12, 2018, Baldwin and the ARB denied Jackson's requests. *Id.* Jackson continued to sign into P.C. and each of his P.C. requests were denied. *Id.* at ¶ 31.

Jackson was placed with the general population on September 12, 2018, where other inmates sexually harassed and intimidated him by telling him to "suck their dicks." *Id.* at ¶ 32. Jackson also alleges that they contaminated his food. *Id.* at ¶ 33.

Jackson suffered psychological and physical injuries including suicidal ideation, severe emotional distress, self-harm, and vomiting blood. *Id.* at ¶¶ 34, 36. These incidents were reported to and documented by a Nurse Williams. *Id.* at ¶ 34.

Jackson alleges that his treatment at Stateville placed him at risk of physical harm, caused severe emotional harm, and aggravated physical and psychological trauma. *Id.* at ¶ 35.

## II.    Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the

5

plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

## III. Analysis

Jackson alleges that the defendants violated his Eighth Amendment rights by failing to protect him in prison. The Eighth Amendment requires prison officials to take reasonable measures to protect inmates. *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). "[H]aving stripped" prisoners "of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199–200 (1993)). This includes "protect[ing] prisoners from violence at the hands of other prisoners," *Id.* at 833 (quoting *Cortez-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)), and, by extension, correctional officers. *Id.* at 834.

The test for demonstrating failure to protect is two-fold. First, an inmate must demonstrate that he is incarcerated under conditions posing a substantial risk of an objectively serious harm. *Id.* Second, the inmate must show that prison officials acted with deliberate indifference to that risk, which requires a subjective inquiry into a prison official's state of mind. *Id.* at 838-39.

### A. Substantial Risk of an Objectively Serious Harm

For cases alleging a failure to protect, an inmate must show that he was incarcerated under conditions posing a substantial risk of an objectively serious harm. *Id.* at 834 (citing *Helling v. McKinney*, 509 U.S. 25, 34 (1993). In this case, Jackson raises several different substantial risks of harm—the possibility of self-harm, violence by other prisoners, and violence by correctional officers. As pled, only this last risk rises to the level of an "objectively serious harm."

### 1. Self-Harm

Jackson argues that his vulnerable mental state, combined with the stressful conditions of his confinement, put him at significant risk of self-harm. The Complaint alleges that, as a result, he "took acts that resulted in harm to his person and mental health." Dkt. 56, ¶ 36. While the obligation to intervene covers self-destructive behaviors, *Miranda v. County of Lake*, 900 F.3d 335, 349 (7th Cir. 2018), the occurrence of self-harm does not automatically give rise to a failure to protect. *See Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (holding that a plaintiff who had engaged in self-harm could not bring a failure to protect claim because he had received adequate treatment on each occasion of self-harm).

In this case, the Complaint contains only a vague reference to self-harm (at the conclusion) and does not provide specific allegations that would suggest that there was a substantial risk of such harm occurring. This is not enough to put the defendants on notice of the allegations against them. Without more detail, the allegations are too vague to state a claim.

### 2. Harm from other inmates

Jackson also alleges that he was placed at risk of harm by other inmates. A substantial risk of harm exists where prison officials place a detainee in a location where they know that there is a "high probability" of attack or other harm. *Budz*, 398 F.3d at 911 (citing *Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995)). While a substantial risk may exist when an inmate is put into contact with known violent individuals, a brief exposure to the prison population generally, without more detailed allegations, is not sufficient to establish "risks so great that they are almost certain to materialize if nothing is done." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004).

The Complaint alleges that Jackson was in the general population bullpen on October 2, 2017, February 14, 2018, and September 12, 2018. However, these short instances of general population placement and Jackson's demonstrated ability to continue to sign himself into P.C. reveal a lack of substantial risk of harm arising from the "hit" against him and threats by other prisoners. The Complaint alleges many instances where Jackson was denied prison-level P.C., but does not plead that this prevented him from remaining in unapproved and voluntary P.C. There was no substantial risk of harm to Jackson arising from the "hit" or threats by other prisoners because he remained in P.C. throughout much of his time at Stateville.

### 3. Correctional Officers

The Complaint does, on the other hand, allege a substantial risk of harm at the hands of correctional staff. Rosa's ability to wake Jackson up in the night in order to

8

threaten him, and Bedwell, Mulvill, and Rosa's ongoing harassment and threats while Jackson was in P.C. are specific allegations that suggest a substantial risk of objectively serious harm. The behavior is particularly threatening when done by correctional officers who are charged with keeping prisoners safe. The Complaint demonstrates a substantial risk of harm at the hands of correctional officers arising from repeated sexual harassment and threats.

The defendants argue that the officers did not pose a serious threat because their threats did not culminate in physical violence. A threat of future harm, however, is sufficient to support a failure to protect claim. *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). A plaintiff does not have to await the consummation of a threatened injury to obtain protective relief, *Farmer v. Brennan*, 511 U.S. 825, 845 (1994), as "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Helling*, 509 U.S. at 33. The Seventh Circuit has made clear that a substantial risk of harm may exist where prison officials place a detainee in a location in which they know that there is a "cobra," *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005), such as placing an inmate in the proximity of correctional officers that have threatened to harm him.

Furthermore, psychological harm alone can be sufficient to meet the constitutional minima, as the Eighth Amendment protects vulnerable inmates against psychological pain deliberately inflicted by correctional officers. *Lisle v. Wellborn*, 933 F.3d 705, 716 (7th Cir. 2019). "To attempt to draw a categorical

distinction between verbal and physical harassment is arbitrary because physical and psychological pain may constitute cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015) (reversing a district court's dismissal where the defendant correctional officer on crudely sexually harassed the plaintiff on several occasions); *see Leiser v. Kloth*, 933 F.3d 696, 703 (7th Cir. 2019) ("Inmates have long had a clearly established right to be free from intentionally inflicted psychological torment and humiliation unrelated to penological interests."). Generalized threats, statements, or acts of sexual or other harassment may cause psychological harm prohibited by the Eighth Amendment.

The Complaint alleges that on multiple occasions Stateville correctional officers sexually harassed Jackson in graphic and vulgar ways. Such statements were threatening, especially when delivered by correctional staff. As threats of future harm are sufficient to trigger a failure to protect claim, this and the other harassment described provides the basis of a failure to protect claim. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

### B. Deliberate Indifference to that Risk

After establishing a substantial risk of objectively serious harm, an inmate must allege that prison officials acted with deliberate indifference to the risk. *Id.* at 838–39. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838. This requires a subjective inquiry into a prison official's state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

10

A prison official is liable for failing to protect an inmate only if the official knows and disregards an excessive risk to the inmate's health and safety. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). The standard is high: the prisoner must establish that the official was actually informed of "a specific, credible, and imminent risk of serious harm." *Id.* at 481. A prisoner may demonstrate knowledge of the risk by showing that he complained to prison officials about the specific threat to his safety. *Id.* at 477; *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Stating that prison officials *should have known* of a risk is not enough to state a claim of deliberate indifference. *Gevas*, 798 F.3d at 480. However, a plaintiff may allege that defendants were aware of threats against him or personal characteristics from which they could have inferred that he is particularly vulnerable. *Jones v. Russell*, 950 F. Supp. 855, 857 (N.D. Ill. 1996).

Six defendants move to dismiss. The Complaint contains few allegations against all of them except Benton. Defendants Clemmens, Nicholson, Moreno, and Williams denied Jackson's first P.C. requests and emergency grievances. Jackson does not allege that Clemmens, Moreno, and Williams had any specific knowledge of Jackson's harassment. In fact, these defendants are only mentioned by name *before* Jackson was harassed by correctional officers. Baldwin is also only mentioned once— pertaining to an ARB decision to deny Jackson P.C.—but neither Baldwin's role in this decision nor any knowledge by him of Jackson's complaints is alleged. Nicholson, meanwhile, appears to have been aware of Bedwell's initial harassing remarks, but

11

not the significantly more serious threats by correctional officers that followed. These facts are not sufficient to show subjective knowledge and disregard for Jackson's safety. Jackson fails to allege that these defendants knew about the specific threats and harassment by the correctional officer defendants against him. Jackson has failed to state a failure to protect claim against these five defendants.

Conversely, Jackson has pled that Benton was told about the threats and harassment he faced during their February 14, 2018 meeting. Benton's knowledge and subsequent failure to share this information with the ARB constitutes a disregard of this substantial risk. Therefore, Jackson has properly alleged the requisite knowledge to state a failure to protect claim against Benton.

## IV.     Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss [Dkt. 69] is granted in part and denied in part. The Motion is granted as to defendants Baldwin, Clemmens, Moreno, Nicholson, and Williams and denied as to Benton. The Clerk of the Court is also directed to terminate Stateville as a defendant and remove it from the caption of the case. All dismissals are without prejudice.

E N T E R :

Dated: July 26, 2021

_____
MARY M. ROWLAND
United States District Judge